[Nos. 53037–8, 53335–1, 53681–3.   En Banc.   February 18, 1988.]

VICTOR DAGGS, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

ROSALIE E. STEPHENS, ET AL, *Appellants,* v. THE CITY OF SEATTLE, *Respondent.*

NORMA J. JOHNSON, *Respondent,* v. JANE MATTSON, ET AL, *Defendants,* THE CITY OF SEATTLE, *Petitioner.*

*Lembhard G. Howell,* for appellant Daggs.

*Keith L. Kessler* (of *Stritmatter, Kessler & McCauley*), for appellants Stephens.

*Douglas N. Jewett, City Attorney, Gordon F. Crandall, Senior Assistant,* and *J. Roger Nowell* and *Victoria M. Seitz, Assistants,* for the City of Seattle.

*Schroeter, Goldmark & Bender* and *Matthew G. Knopp,* for respondent Johnson.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae.

DORE, J.—Three injured plaintiffs claim that the City's claims filing ordinance, Seattle Municipal Code 5.24.005, which requires a tort victim to file a claim with the City and then wait 60 days before bringing suit, is invalid. The victims point out that if they were required to wait 60 days after filing their claims, they would be subject to the new tort reform act (hereinafter Tort Reform Act), Laws of 1986, ch. 305, which applies to cases filed in superior court after August 1, 1986.

## FACTS

Daggs. Victor Daggs was injured on January 12, 1986, when his car collided with a van which was being pursued

in a high speed chase by a Seattle Police Department patrol car. Daggs alleged that the police negligently conducted the high speed chase and he filed a claim for damages with the City on June 3, 1986. Pursuant to the Seattle claims filing ordinance, Daggs was required to wait 60 days before filing suit in superior court. However, because the new Tort Reform Act would take effect on cases filed after August 1, 1986, Daggs did not wait the required 60 days and instead filed suit on June 25, 1986.

On August 1, 1986, the City moved to dismiss Daggs' complaint because of his failure to comply with SMC 5.24-.005. The trial court granted this motion, and later denied Daggs' motion for reconsideration. Daggs then moved for direct review by this court, which was granted on March 3, 1987.

Stephens. On January 18, 1985, William Stephens was driving a motorcycle on North 50th Street in Seattle when his motorcycle struck a curb which allegedly was protruding into the roadway. Stephens suffered severe brain damage because of this accident and his parents have been appointed as his guardians and coconservators of his estate.

On July 6, 1986, his parents contacted counsel, and 2 days later a claim was filed with the City alleging damages from the poorly constructed curbing. On July 11, 1986, counsel filed suit in superior court, to try to prevent the application of the Tort Reform Act to the case. On July 29, 1986, the City moved to dismiss the suit for failure to comply with the 60–day waiting period, and this motion was granted on November 17, 1986. Stephens appeals this dismissal, and this case was consolidated with Daggs' suit to determine the validity of SMC 5.24.005(c).

Johnson. Christopher Johnson, a 6–year–old boy, was enrolled in a day care center in Seattle. The day care workers took Christopher to Gas Works Park in Seattle on September 1, 1983. At the park, Christopher allegedly played in a "play barn" area and fell from an apparatus. He suffered a fractured skull, as well as other injuries.

On July 18, 1986, Christopher's mother filed a claim with the City for damages on her own behalf and as guardian ad litem for Christopher. Three days later, Christopher's mother and Christopher filed suit in superior court against the City and other defendants. The City moved to have both causes of action dismissed for failure to comply with SMC 5.24.005(c). The trial court, however, denied this motion. The City petitioned the Court of Appeals for discretionary review, and subsequently this case was consolidated with the suits brought by Daggs and Stephens.

At oral argument, the City conceded that Christopher's mother's suit should not have been dismissed pursuant to SMC 5.24.005(c), as the ordinance cannot be invoked when to do so would cause the applicable statute of limitations to run. Christopher's mother had until September 1, 1986, to file suit, and application of the 60–day waiting period would prevent Christopher's mother from filing suit until after that date. SMC 5.24.005(c) does still apply to Christopher, however, as the applicable statute of limitations is tolled until he reaches 18. RCW 4.16.190.

### Power To Enact Claims Ordinances

In 1967, the Legislature enacted RCW 4.96.010, which abolished the doctrine of sovereign immunity for the political subdivisions of the state. This statute and RCW 35.31-.030, however, require that as a condition precedent to maintaining an action in court, an injured party must comply with the applicable claims filing laws. These laws, including SMC 5.24.005, typically require that an injured party file a claim with the political subdivision, describing the accident, the party's current address, and the amount of the claim.

Certain claims statutes and ordinances have been subject to attack in recent cases. RCW 35.31.020, which required that claims be filed with certain cities within 120 days of the date of the accident, was held to be unconstitutional by this court because it arbitrarily shortened the amount of time in which an injured party could bring an action

against the State or its political subdivisions. Equal protection requires that a party have the same amount of time to bring a tort action against the government as he or she would have to bring the action against a private tortfeasor. *Hunter v. North Mason High Sch.,* 85 Wn.2d 810, 539 P.2d 845 (1975); *Jenkins v. State,* 85 Wn.2d 883, 540 P.2d 1363 (1975).

Not all claims filing laws, however, were invalidated. Claims filing laws serve the important function of fostering inexpensive settlement of tort claims. So long as the procedural burdens of filing claims with the government are reasonable, the claims laws are valid. *Hall v. Niemer,* 97 Wn.2d 574, 581, 649 P.2d 98 (1982). At issue in this case therefore, is whether Seattle's claims ordinance was validly enacted and does not impose an unreasonable procedural burden.

RCW 35.31.010 mandates that claims filed with charter cities such as Seattle must contain certain information, such as the current residence of the claimant. RCW 35.31-.010 provides, in part:

> Whenever a claim for damages sounding in tort against any city permitted by law to have a charter is presented to and filed with the city clerk . . . in compliance with valid charter provisions thereof . . . such claim must contain in addition to the valid requirements of the city charter . . . a statement of the actual residence of the claimant . . .

The plaintiffs argue that this statute not only requires that certain information be included in the claim, but also mandates that any claims filing requirement be contained in the city charter. Seattle has a charter, but the charter does not contain a claims filing provision. Instead, that provision is contained in an ordinance, and the plaintiffs assert that this is impermissible.

The plaintiffs rely on the holding in *Amende v. Bremerton,* 36 Wn.2d 333, 217 P.2d 1049 (1950) for this proposition. In *Amende,* the plaintiff sued the City of Bremerton (a charter city) to collect on some municipal bonds. Despite

the fact that this suit was not brought in tort, the court held that the plaintiff was making a "claim for damages" and must comply with the applicable claims section. The court then held that since no state statute required a claim to be filed, and since Bremerton did not have any charter provision regarding claims, the claim for damages could proceed. *Amende,* at 338. The case did not decide, however, whether a Bremerton claims filing ordinance would have been valid.

■ The City contends that neither RCW 35.31.010 nor the holding in *Amende* mandates that the only method of enacting a valid claims filing provision would be by amending the city charter. We agree. The purpose of RCW 35.31-.010 is to ensure a claimant provides the City with his or her current address. While the wording of the statute indicates that the claim must be "in compliance with valid charter provisions . . .", it does not explicitly require that the claims filing provision be found in the charter itself. Moreover, as mentioned above, the *Amende* case did not decide whether Bremerton could have validly enacted a claims filing ordinance.

Article 4, section 15 of the current Seattle charter imparts on the city council broad legislative powers.

> The City shall, in addition to the powers enumerated in this Charter, have all other powers now or hereafter granted to or exercised by municipal corporations of like character and degree . . . and may exercise the same by ordinance and not otherwise.

This court has repeatedly held that first class cities such as Seattle may enact any ordinance which does not contravene the constitution, state statutes or the city charter. *Chemical Bank v. WPPSS,* 99 Wn.2d 772, 792, 666 P.2d 329 (1983); *Winkenwerder v. Yakima,* 52 Wn.2d 617, 622, 328 P.2d 873 (1958). Since none of these provisions preclude Seattle from enacting a claims filing law by ordinance, the ordinance was validly enacted.

EQUAL PROTECTION GUARANTIES

The plaintiffs also assert that the claims filing ordinance violates the equal protection guaranties found in Const. art. 1, § 12 and the Fourteenth Amendment. The plaintiffs argue that no valid reason exists to make tort victims of the government wait 60 days before filing suit when other victims of torts committed by private persons may file suit immediately. The detrimental effect to the plaintiffs of the 60–day period is particularly strong in this case, as cases filed after August 1, 1986, are subject to the new Tort Reform Act. Thus, individuals injured by a governmental agency after June 1, but before August 1 (or individuals such as the plaintiffs in these actions who did not file a claim before June 1) are treated differently from individuals injured by a private tortfeasor. The plaintiffs assert that this difference violates equal protection guaranties.

As a preliminary matter, the parties argue as to what the proper standard of review should be. If an ordinance creates a suspect classification, such as one based on race or alienage, the statute will be subjected to strict scrutiny. *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). Statutes and ordinances which do not affect fundamental rights or create suspect classifications are generally subjected to minimal judicial scrutiny. *Petersen v. State,* 100 Wn.2d 421, 444, 671 P.2d 230 (1983). This minimal scrutiny test simply requires that the legislation involved be rationally related to the achievement of a legitimate state interest. *Nielsen,* at 820. In some cases, which do not involve fundamental rights, but involve important or basic human rights, this court has adopted an intermediate level of scrutiny. *See, e.g., State v. Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983) (intermediate scrutiny of rules affecting presentence jail time credits). This test requires that the challenged law may be viewed as furthering a substantial interest of the State. *Phelan,* at 512.

The plaintiffs claim their basic right of being fully compensated for their injuries would be severely affected by

their being required to proceed under the new Tort Reform Act. They point to the decision in *Hunter v. North Mason High Sch.*, 85 Wn.2d 810, 814, 539 P.2d 845 (1975), which held

> [t]he right to be indemnified for personal injuries is a substantial property right, not only of monetary value but in many cases fundamental to the injured person's physical well–being and ability to continue to live a decent life.

The decision in *Hunter* went on to invalidate on equal protection grounds a claims filing statute that shortened the statute of limitations. Significantly, however, the opinion did not specify which standard of review it applied.

██ The more recent decisions surrounding claims filing ordinances and statutes appear to follow a minimal scrutiny standard of review. *See, e.g., Coulter v. State,* 93 Wn.2d 205, 608 P.2d 261 (1980). However, a theme which is common to all cases dealing with claims filing laws is that there is never a rational basis to distinguish between private and public tortfeasors, and that no substantial hurdle may be imposed on an individual's ability to sue a governmental tortfeasor. As this court held in *Hall v. Niemer, supra* at 581:

> Read consistently, [the decisions in] *Hunter, Jenkins,* and *Coulter* stand for the proposition that reasonable procedural burdens may be placed on governmental tort victims as long as such burdens are not substantial and do not constitute a real impediment to relief for governmental tort victims.

The question before this court therefore is focused on whether this claims filing requirement imposes a "real impediment to relief". If it does impose such an impediment, then regardless of the standard of review used, the statute will violate equal protection guaranties.

It is clear that the ordinance does affect the amount of damages the plaintiffs may recover. However, it does not

affect the plaintiffs' right to institute a lawsuit, and the ordinance was not enacted to accelerate the date on which the Tort Reform Act would become effective. Furthermore, as this court held in dicta, in *Hall*:

the 60–day buffer period between filing a claim and suit is reasonably related to achieving negotiation and settlement. *As long as such a provision does not shorten the statute of limitations for bringing such suits, they would be valid . . .*

(Italics ours.) *Hall*, at 584 n.4. The *Hall* decision indicates that as long as the plaintiff can seek redress in the courts, a short waiting period before a suit can be brought is permissible.

Moreover, in an analogous situation, we held that a tortfeasor has no vested right to a common law bar to recovery. Thus, in *Godfrey v. State*, 84 Wn.2d 959, 530 P.2d 630 (1975), we held that the statute which abolished contributory negligence as a defense, former RCW 4.22.010, could apply to torts committed before the statute became effective. Equally true, we believe, is that a tort victim has no right to recover under the old common law system, even if the new Tort Reform Act would adversely affect the total amount he or she would receive as damages. The mere fact that an ordinance which otherwise effectuates a valid state interest causes a delay which thereby changes whether the plaintiff can proceed under the new tort system or the old one, does not violate the plaintiffs' equal protection or due process rights.

## CONCLUSION

SMC 5.24.005 is a validly enacted ordinance which requires plaintiffs to wait 60 days prior to bringing suit in superior court. The plaintiffs did not fulfill this valid condition precedent and their cases should have been dismissed. The court's dismissal of Daggs' and Stephens' suits is affirmed, and the denial of the motion to dismiss Christopher Johnson's case is reversed. Christopher's mother,

however, may proceed with her case, as the City has conceded that because the applicable statute of limitations would run, SMC 5.24.005(c) does not apply to her suit.

DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J. (dissenting)—The majority holds that RCW 35.31.010 by itself imposes a duty of claim filing and can be and is supplemented by an ordinance rather than a charter provision.

This holding is contrary to a plain reading of the statute and directly contrary to three opinions of this court, the first of which has been unchallenged for 76 years.

Looking first at the statute, RCW 35.31.010, it is clearly stated that in the case of a claim against a charter city, the claim must be filed in compliance with valid *charter* provisions thereof. Note that the claim is not to comply with an ordinance, but must comply with provisions of the *charter*.

The statute goes on to require specific information in addition to "the valid requirements *of the city charter* relating thereto". (Italics mine.)

Here Seattle has no charter requirements applicable to these claims. *Hall v. Niemer,* 97 Wn.2d 574, 581, 649 P.2d 98 (1982).

The majority reads the statute to say that when the statute refers to *charter* provisions it really means charter or an ordinance. That is a reading precluded by our prior, viable holdings specifically on point.

In *Wolpers v. Spokane,* 66 Wash. 633, 635, 120 P. 113 (1912), the court was interpreting Laws of 1909, ch. 83, § 1 which is the predecessor of RCW 35.31.010 and identical for this purpose. The court held that the statute can only be invoked by reference to the charter. Since the specific filing requirement was not in the charter no such requirement existed, *i.e.,* if it is not in the charter, it is not required. The same is true here; it is not in the charter and the ordinance is not valid.

The court said:

The first section of the act of 1909 makes it manifest that the provisions of that law, as relating to cities of the first class, have no independent force. *They can only be invoked by reference to the city charter,* and as applying to claims prescribed and filed "in compliance with valid charter provisions of such city." That law does not extend the requirement of notice, either as contained in any city charter or as contained in the law itself, to other persons or other torts than those contemplated by such city charter. *If the charter does not require the presentation or filing of any notice of claim* in a case such as here under consideration, *then the law of 1909 requires none.*

(Italics mine.) *Wolpers,* at 635.

*Maggs v. Seattle,* 86 Wash. 427, 428, 150 P. 612 (1915) is to the same effect: "Independent of some valid *charter* provision requiring the presentation and filing of a claim, this act of 1909 has no force. It merely adds a new requirement to those *made by the charter.*" (Italics mine.)

Judge Ellis' concurrence in *Haynes v. Seattle,* 87 Wash. 375, 380, 151 P. 789 (1915) refers to the act now contained in RCW 35.31.010, stating "it can only be invoked by reference to the *city charter*". (Italics mine.)

To me the proposition is very simple. The statute approves claim filing requirements in the city charter, but only in the city charter. The cases are absolutely clear in holding that the statutory authorization extends only to provisions in the charter. It may be easier and less cumbersome to try to impose claim filing and delay of suit requirement by ordinance, but the only statute in point, and the cases, mandate that such requirements be in the charter.

The majority says that the statute "does not explicitly require that the claims filing provision be found in the charter itself." Majority, at 54. How the statute could be more clear escapes me. When the statute states that the filing must be in compliance *with* valid "charter provisions" and must contain information "*in addition to the valid requirements of the city charter*" it appears to me that the

statute refers to requirements in the charter. (Italics mine.) Any other reading ignores the plain language of the statute. In fact the majority's holding renders the statute meaningless.

I would reverse the dismissals in Daggs and Stephens, and affirm Johnson.

PEARSON, C.J., and UTTER and ANDERSEN, JJ., concur with BRACHTENBACH, J.